## 𝔴𝔦𝔠𝔥𝔪𝔬𝔫𝔡

RALPH P. ZEHLER, ET AL. v. E. L. BRUCE COMPANY, INC.

April 22, 1968.

Record No. 6663.

Present, Eggleston, C.J., Buchanan, Snead, l'Anson, Gordon and
Harrison, JJ.

*George P. Smith, Jr.* for plaintiffs in error.

*Joseph M. Wood, III (David J. Wood, Jr.; Wood, Wood and Wood,* on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

E. W. Thomas, Jr., Charles Alexander and Ralph P. Zehler, Jr. appeal from a joint and several judgment for $18,316.15 entered for E. L. Bruce Co. (Incorporated) against them,[1] based upon their undertaking under the following instrument:

---

[1] The corporate name of the plaintiff-appellee (which we will refer to as "Bruce Company") is set forth correctly in the text.

The judgment for Bruce Company was entered against Garland Ramsey, as well as against the three other defendants named in the text. Since Ramsey did not petition for an appeal, the judgment against him is now final.

"For valuable consideration received, the undersigned Directors and Officers of Central Virginia Furniture Company, Inc., a Virginia Corporation, hereby personally guarantee payment to *not to exceed 2000.00*, of the sum of $ *of the Purchase order*, for merchandise sold to Central Virginia Furniture Company, Inc.

"Given under our hands this *4* day of *Feb., 1965.*

| " | Garland Ramsey | (SEAL) |
| --- | --- | --- |
| " | E. W. Thomas Jr. | (SEAL) |
| " | Charles Alexander | (SEAL) |
| " | Ralph P. Zehler, Jr. | (SEAL)" |

(Italics indicate handwritten words and figures in the body of the instrument.)

The evidence showed that counsel for Central Virginia Furniture Company, Incorporated ("Central Virginia Company") prepared this guaranty instrument. Before the instrument was signed Garland Ramsey, president of the company and one of the guarantors, filled in the blank spaces in the body of the instrument by adding the italicized words and figures appearing above.

Counsel stipulated in effect that Bruce Company was the intended beneficiary under this guaranty, that the purchase order referred to in the guaranty covered merchandise sold by Bruce Company in March 1965 pursuant to Central Virginia Company's second purchase order, and that neither Central Virginia Company nor the guarantors had paid Bruce Company the sum of $18,316.15 owing for that merchandise.

The trial court admitted parol evidence, which we will describe, to explain the meaning of the guaranty.[2]

Bruce Company introduced evidence to show that during the negotiations for the extending of credit to Central Virginia Company, Bruce Company refused to agree to any extension of credit unless all purchase orders were fully guaranteed by officers and directors of Central Virginia Company.

In addition to the guaranty instrument set forth above, Bruce Company introduced a guaranty instrument signed by three of the defendants in this case (and by R. C. Omohundro) and delivered to

[2] Counsel for the guarantors objected to the admission of the parol evidence. But as pointed out in *Whitt* v. *Godwin*, 205 Va. 797, 139 S.E.2d 841 (1965), a court on proper motion should disregard parol evidence admitted in contravention of the parol evidence rule, even if originally admitted without objection, because the parol evidence rule is a rule of substantive law rather than a rule of evidence.

Bruce Company in December 1964. That instrument, which related to Central Virginia Company's first purchase order, guaranteed "payment to E. L. BRUCE CO. (INCORPORATED), of the sum of $ *(Your order #7916) (Our order #642) Total amount not to exceed $1,000.00 after total of order*". The court asked Ramsey, "what was your understanding of your liability on that one [the guaranty for the first order]". Ramsey answered, "[i]t is the same as on the second one [the guaranty now in issue]". (Ramsey said, however, that he did not understand the meaning of the words of the earlier guaranty.[3])

Bruce Company also introduced two letters from Ramsey, dated December 11, 1964 and July 22, 1965. In the first letter, which enclosed the guaranty covering the first purchase order, Ramsey stated: "If you want to use this letter [apparently referring to the enclosed guaranty] as a blanket order [apparently meaning blanket guaranty], it will certainly be alright, but we prefer sending the letter in this manner until you people can ship to us on an open account." (Bruce Company acquiesced in the suggestion that a separate guaranty be given for each purchase order.) In the second letter, which was written after Bruce Company had requested payment under the guaranty involved in this case, Ramsey stated: ". . . you fully realize that your account is fully protected . . . ".[4]

[1] Bruce Company relies upon those letters as proof that, before the guaranty in question was delivered, the guarantors intended to guarantee payment in full of all purchase orders and, after the guaranty in question had been delivered, they thought that payment of the full amount in question ($18,316.15) had been guaranteed.

In giving reasons for considering this parol evidence, the trial judge said: "It is perfectly apparent to me and I do hold that there is an ambiguity on the face of this guaranty. The words 'not to exceed $2,000.00' are on the line for the name of the person to whom the guaranty is given, and on the space for the guaranty is 'for the sum of the purchase order'." Continuing, the judge said "payment to 'not to exceed $2000.00' . . . makes no sense; after the word 'to'

---

[3] A witness for Bruce Company explained that the earlier guaranty guaranteed payment of $1,000.00 more than the purchase order because the company often shipped more merchandise than was covered by a purchase order.

[4] Because there was no proof that the other guarantors authorized Ramsey's statements in the second letter, the court admitted that letter as evidence against Ramsey only. Part of the other parol evidence was similarly admitted against Ramsey only. But in deciding the case, the court apparently treated all parol evidence as binding upon all guarantors.

should have been the name of the person to whom the guaranty was given, and then the sum . . . [guaranteed]". On the basis of the parol evidence the court entered final judgment against all guarantors, jointly and severally, for $18,316.15, plus interest and costs.

If this parol evidence had not been considered, the court would have had no basis for entering a judgment for $18,316.15 instead of $2,000.00, which the guarantors admitted they owed. So we must decide whether the court properly considered the parol evidence.

Perhaps, as the trial judge found, the words and figures "the undersigned . . . guarantee payment to not to exceed 2000.00 of the sum of $ of the Purchase order" make no sense. But no one could reasonably interpret those words and figures as evidencing an intent to guarantee the payment of $18,316.15. Only two interpretations are possible: those words and figures evidence an intent to limit the amount of the guaranty to $2,000.00, or they evidence no intent respecting the maximum amount guaranteed.

If those words and figures do not evidence the maximum amount intended to be guaranteed, the instrument is patently ambiguous as to the amount guaranteed. And parol evidence cannot be considered to explain a patent ambiguity, that is, to supply the understanding that the parties could have reasonably been expected to reach where the language of the instrument reflects no understanding. See *City of Roanoke* v. *Blair*, 107 Va. 639, 641, 60 S.E. 75, 76 (1908); *Gatewood* v. *Burrus*, 7 Va. (3 Call) 194 (1802); 9 *Wigmore, Evidence* § 2473, at 241 (3d ed. 1940). So assuming the guaranty is ambiguous respecting the maximum amount guaranteed, we hold that the trial court erred in considering parol evidence to determine the amount.[5]

In our opinion, however, the guaranty on its face evidences an unambiguous intent respecting the maximum amount guaranteed. The only handwritten words and figures inserted in the blank spaces in the body of the typewritten guaranty form (other than the hand-

[5] This guaranty contains at least one latent ambiguity or equivocation, that is, "a term which, *upon application to external objects*, is found to fit *two or more of them equally*". 9 *Wigmore, Evidence* § 2472, at 233 (3d ed. 1940). In the instrument the guarantors used the term "the Purchase order", thereby declaring their intention respecting the subject of the guaranty. But upon looking outside of the instrument, one finds two purchase orders from Central Virginia Company to Bruce Company. Parol evidence could have been properly considered to explain this equivocation, to identify the purchase order that was the subject of the guaranty. See *Ewell* v. *Brock*, 120 Va. 475, 478, 91 S.E. 761, 762 (1917); *City of Roanoke* v. *Blair, supra;* 9 *Wigmore, Evidence* § 2472, at 233 (3d ed. 1940). Parol evidence was not needed in this case, however, because counsel had identified the purchase order by stipulation.

written date) are: "not to exceed 2000.00 . . . of the Purchase order". Those words and figures evidence an intent to guarantee up to $2,000.00 of the total amount of the purchase order. The type-written words of the instrument cast no doubt upon that intent.

[2] We therefore reverse the judgment against the defendants E. W. Thomas, Jr., Charles Alexander and Ralph P. Zehler, Jr., and enter judgment here in favor of E. L. Bruce Co. (Incorporated) against those defendants in the principal amount of $2,000.00, plus interest from the date fixed by the trial court (Va. Code Ann. § 8-223 (Supp. 1966)) and the costs taxed in the trial court. The appellants having substantially prevailed on this appeal, costs in this Court will be taxed against the appellee.

*Reversed and final judgment.*